Good morning, Your Honors. Lee Tucker of the Federal Defender's Office for Mr. San Juan Hernandez, and I will be reserving three minutes for rebuttal. May it please the Court. Your Honors, as you know, the sentencing hearing is a critical stage in criminal proceedings, and under the Sixth Amendment, an accused is entitled to effective representation at that hearing. In this case, Mr. Hernandez's counsel failed spectacularly to fulfill that role. Instead of arguing for less time for his client, which is what his client wanted, as we'll see, he focused on the theme that a long prison sentence would be beneficial to Mr. Hernandez. He argued against liberty by repeatedly emphasizing to the Court throughout the hearing the beneficial aspects of a lengthy prison sentence for his client because of his client's medical condition, of cardiopathy. This is somewhat of an ethical dilemma, because on the one hand, he said that if he didn't get this kind of treatment for his cardiomyopathy, he couldn't afford it on the outside, and he would die. Well, Judge Bea, I believe that the record reflects that defense counsel felt an internal struggle, but his ethical duty here was to his client. Well, that's what I'm saying. His duty was to his client. Does he want a free dead man or a live prisoner? Well, the reason we know here that what the client wanted was less time is because we know it from three different aspects that are all in the record. First of all, Mr. Hernandez himself asked the Court for leniency, and it makes sense that a man who believes he may be dying soon would want the shorter prison sentence so that he would have a chance to get back out and be with his family. So first, he asked for leniency. Second, we know from the record, it's in the sentence hearing transcript, that the reason Mr. Hernandez rejected the plea offer was because he hoped with the mitigating factors brought forward in the psychological evaluation that he would do better pleading directly to the indictment. And third, we know that, in fact, the client wanted less time because one time in the sentence hearing, counsel, equivocally and tentatively, but one time, counsel asked the Court for a sentence commensurate with the co-defendant of 84 months. Now, contrast that with the four times that defense counsel emphasized how beneficial prison would be. And it's at pages 17 and 18 of the opening brief. Four times, he talked about how good it was. Once, he said very equivocally, maybe the Court could consider a lesser sentence. He said, frankly, it would be in his best interest to receive the most amount of time because being in prison is keeping him alive. Second, if this Court were to sentence him to time serve, he would die. Third, this Court, by giving him the sentence the government wants, now, keep in mind, what the government wanted was 134 months. But he would be dead. As Judge Beyer just asked you, which is better for counsel, a live prisoner or a dead free man? What we see from the record is that at the time he committed the offense, he was very ill. He was on death's doorstep. And he would be dead in a short period of time, from what I gather. Well, no, what we see from the pre-sentence report, Your Honor, is that his condition stabilized and he was actually in remission. Stabilized after he was in prison. There's no reason to think that staying in prison was the only way that he could stay healthy. He had applied for social security disability. He was receiving medicine. And, again, what I come back to is it's the client's decision. Let's assume for a moment that the client was not as aggressive or as effective as you would have liked him to have been. Where's the prejudice? Exactly. You have to establish the reasonable probability that he would have gotten a lesser sentence. That's right. He got the lowest of the guidelines, didn't he? He got the lowest of the guidelines. But keep in mind that going into this hearing, that was effectively, that was the starting point. Nobody was asking for more than 134 months. Probation office record. He didn't have the best record, right? He had a terrible record. And he was in there on, right at the very beginning of the sentencing hearing, the judge, he admits to a violation of supervised release. Yes, that's true. So he had a separate issue there as well. That's true, Your Honor. So why, tell me why, I read your brief very carefully and I didn't see a very strong argument about why it's reasonably probable that he would get a lesser sentence if his lawyer had said, judge, you've just got to give him 84 months. You can't do anything else with that or he's going to be dead. I absolutely believe that there's a very reasonable probability that he would have. And what we need is a probability sufficient to undermine our confidence in the outcome. We see on the record here that the district court judge was grappling with this case. He said, you know, I kept going back and rereading the pre-sentence report. I was trying to figure it out. Here's this guy on death's doorstep and he chooses to commit an offense. The judge was of two minds. He said maybe he is better off in prison if he's finally getting the medication he believes he needs. That's maybe. The next sentence, but one thing I certainly came to the conclusion was the rest of society is better off if you are in prison. So he considered the argument of health in prison, but he came down on the idea that this man was a danger to society. Judge Beyer, that absolutely points out that he did consider the illness and defense counsel's continued emphasis on the benefits of prison. But he discarded it. He said maybe that, but certainly this. Let me go back also to Judge Paez's question about the prejudice, because there is prejudice here. What we have here is a case nobody is arguing on behalf of Mr. Hernandez. Not only is it as if he doesn't have counsel, he's got his defense attorney effectively acting as a de facto second prosecutor. He made it easy for the judge to give the 134 months, 11 years and two months that the prosecutor and the government, that the prosecutor wanted and the probation office recommended. The judge was grappling with this. What we see here is a complete failure of advocacy. And if the attorney had been a strong advocate, he could have said, look, judge, we do have mitigation here. This is actually a very compelling case. Mr. Hernandez spent most of his 20s and 30s in prison. And then he makes this dramatic turnaround, and that's uncontested. He gets out of prison in 2006. He gets a job. A dramatic turnaround? What's a dramatic turnaround? How many crimes did he have to commit to have a dramatic turnaround? Within months of the time that he was picked up, he was involved in various things, wasn't he? Well, Your Honor, if you look at the timeline, he was released in March of 2006. And he got a job. And he stayed at that job. He was in community college, continuing the path he'd started in prison. And then in late 2006, eight months after his release, he hadn't committed a crime, he hadn't done anything wrong. He collapses. And that's when he's taken to the hospital, and they say, you're going to be dead in four days. And then a few days later, they say, okay, 30 days. He gets out. He's on medication. But as the months go on, and he hasn't yet received his Social Security disability income, he can't afford his medication. And that's so it's a year and a half. It's from March 2006 to August 2007, before he's arrested in this case. And those are mitigating factors. And he was very sick. We have psychological evaluation informing the judge that he had moderately impaired judgment at the time of this. He was desperate. So I think absolutely there are mitigating factors that could have been argued. And instead, defense counsel ushered the judge along. In fact, it would have been difficult for the judge to give a lower sentence here, because who's asking for it? Probation officer says 134. Government says 134. Defense counsel, somebody throws out the number 140. 150 months. 170 months. Three. He did, and maybe it wasn't as forceful as you would like, but he did ask for 84 months commensurate with his co-defendant. And the judge responds, well, that's not a fair comparison, because she didn't have the kind of record that Hernandez had. But he didn't argue for that 84 months. He threw it out in a very tentative offhand, well, maybe you'll consider this way. In contrast with the repeated hammering, prison will keep him fat and happy. Prison will keep him light. And the judge refers to that when he makes his decision. Maybe, I'm thinking maybe this guy will be better off in prison. So it's ‑‑ there's a case, it's a slightly different context. Gonzales v. Lopez, I mean, sorry, U.S. v. Gonzales Lopez. It's a Supreme Court, 126 Supreme Court, 2557, 2006. It's the context of denial of counsel of choice. And in that case, the Supreme Court talks about consequences that are necessarily unquantifiable and indeterminate. And that's what we have here. You want to save some time for rebuttal? I will. You've got seven seconds, but I'll give you a minute. Perfect. Thank you, Your Honor. No, I'll save the remaining time for rebuttal. Okay. Thank you. May it please the Court. My name is Elizabeth Strange, and I'm appearing on behalf of the United States. The defendant has to show two prongs here to succeed. One is deficient performance, and the other is prejudice. I'd like to begin with the prejudice portion, if I could. He has to show a reasonable probability that the sentence would have been lower than the guidelines, but for the alleged error. But the record completely undermines it. Say that again? Are you talking about the performance prong, or are you talking about prejudice prong? Prejudice. Prejudice. I was going to start with prejudice, Your Honor, because if there is no prejudice, the Court needs to show that the sentence would have been different, would have been less. Yes. And what that would mean in this case would be below the guideline range. Right. But nobody's complaining about the guideline range. They determined the appropriate guideline range, from what I could tell. Right. But to get a different result, Your Honor, it would have to be below the guideline. Oh, now it's under 3553A. I'm sorry, but I think what the defendant is asking for is a different sentence. No. What I understand them saying, what I understand the argument to be, first of all, nobody complains about the guideline range. Right. Okay. So the judge correctly, properly calculated the guideline range, and that's the starting point, correct? Correct. All right. So the judge had discretion under 3553A to arrive at a different sentence. Yes, sir. So the judge could have been below the guideline range or could have been above the guideline range. Correct. Right? So they're arguing, what I understand the argument to be is that he did not effectively argue for a sentence that varied from the guideline range under 3553A. But the record... And if he had made such an argument, if he had really committed himself to arguing for a lesser sentence, there's a reasonable probability that the judge under 3553A would have imposed something less than 134 months combined. That's what I understand the argument to be. And that's what I'm sorry, Your Honor. That's what I understand the argument to be. So what is it? I mean, they're not arguing the guideline range itself would have been different. They're just arguing that the total, that the ending sentence... Yes. Excuse me, Your Honor. And if that's what you understood, I said, forgive me, that's not what I meant. What I was addressing first was the prejudice prong. Right. And then I was going to turn to the performance. Speak up, please. I'm sorry. Can you hear me better now? Yes. So answer directly. So if the counsel had been more, attempted to be more persuasive or just zeroed in and urged the judge, you know, this fellow is on his last days and he, you know, let him stay with his family. They can provide him with medication. They can do this. They can do that. And he doesn't have long to live. Judge, you've really got to put, you know, 134 months is just too long under these circumstances. Fifty months, judge. Well, Your Honor, the – if you look at what, as Judge Beyazori pointed out, if you look at what the judge said in this case, the basis for his sentencing, he considered all the mitigating factors that had been brought up, the psychological exam that the counsel had gotten, which included his background, his turnaround in life, and the fact that the only thing that sabotaged it was his health. And the court rejected that as a basis and said, look, what I'm looking at is his criminal history. He was Category 6. The fact that he used weapons in the past. And what is his response when he thinks he's ill? He goes out and he commits two drug trafficking offenses. So where the judge came down was the overriding reason was the need to protect society. And that's what he told everyone in the courtroom at the time when he gave his sentence. Where I come down is the most important thing is we need to protect you from society. And what was the defendant's response? He said, I can't deny that. And the court, again, they had an exchange about his use of firearms. And the court again said, where I come down is I think the most important thing is we need to protect you from society. So if you look at his criminal record, which you can't change, you look at the reasons that the court gave for giving the sentence he did, there is no reasonable probability that he would have given a lower sentence, Your Honor. Let me ask you this. Would it be proper for the judge to rely, to pick a sentence based upon his need for medical care in prison? Well, I think that that's the case. Would that be a proper thing for a judge to do? I think it's a consideration looking at all the circumstances that the court could consider. But he rejected it in this case. And I think that Judge Baylor was exactly right. What the – what counsel was doing was struggling with the fact that here he had a client at death's door, he gets into prison, he gets the medication and care that he needed, which he said was the motivation for his crime. And now when he gets out of prison, you know, he may not be able to maintain that health. But, counsel, you haven't answered Judge Paiz's question. I'm sorry? In a vacuum, is it proper for a judge to consider in sentencing whether prison will provide a better health program for the defendant? Yes or no? Yes. I think that that's a – It is? Do you have a case that says that? Well, Your Honor, I think in looking at the circumstances, the motivation for the – 3553 considerations? Well, one of the 3553 would be the circumstances for the offense. And that was the whole what was argued here. His whole – Do you hold that the judges should keep defendants alive in jail? No, I don't. I don't mean that. And that's not what the Court did in this case. The Court did not say – I know. I agree with you. But I don't think you really mean that a consideration for sentencing can be the better health that the defendant can exhibit in jail. No, I don't mean that that's a basis for giving a sentence. So you take that back? Yes, sir. I take that back. What I'm saying is that the motivation, the argument that was given in this case, the motivation for the crime was the overriding need, as defense counsel explained it, as the defendant had explained it, the overriding need for money to pay for his medical care and the medications that he couldn't afford. So in that respect, the way it was argued, that that was the motivating – motivation, this myopic need, as the psychologist had said, to commit this crime, that he didn't – you know, it was a do-or-die situation, which was the theme that defense counsel used at sentencing. But in turning to this performance, you can't just look at what he did at sentencing. Strickland says you need to look at all the circumstances. And all the circumstances in this case include the fact that defense counsel had requested the psychological exam for the sole basis to find mitigating evidence. He used that psychological report to – in his sentencing memorandum, which highlighted any number of mitigating evidence. And then, finally, when he gets to sentencing, there's a whole chunk of the argument that the defendant ignores here. I mean, he began his whole argument by saying, hey, this was a Hobson's choice. He had no choice. Who was his – who was his problem? Who was his do-or-die situation? Then the defendant got up. The defendant certainly didn't understand and didn't think that his counsel had asked for more time. He got up and said, what my counsel said is exactly right. Those are the reasons why – those are the true reasons for my actions. The government certainly understood that he was asking for 84 months. When the government got up, it responded to the request for 84 months and said, well, this is why the defendant isn't on a part with the co-defendant. So the defense in this case can either show prejudice or the fact that it was deficient performance, looking at all the circumstances. And because it's not the argument. The argument here focuses on what happened at the hearing. He could have written a brilliant memorandum, sentencing memorandum, and then walked into court and sabotaged it. That's really what they're complaining about. Yes, sir. But Strickland says you need to look at – that the reviewing court should look at all the circumstances. If I understood this to be a challenge to the entire performance with respect to sentencing, then I think we probably shouldn't reach the ineffective assistance issue, because I can't really – I don't think the record's adequate if you – if that's what the challenge is about. And I don't think that's the challenge. The challenge is to what counsel did at the hearing. But, Your Honor, I don't think it's fair to just look at what he did at the hearing and – you have to look at, well, first of all, the entire argument at the hearing, not picking and choosing his thinking out loud and struggling with the ethical issue. But I think that all the circumstances in this case would include looking at the – at the sentencing memorandum and the psychological exam that he had gotten for the sole purpose of mitigation evidence. Okay. Because that was all that was before the court in terms of arriving at a sentence. Okay. So because the defendant cannot meet either prong, let alone both, the government respectfully requests that you affirm the sentence. Your Honors. My understanding, then, Lady, is that you're looking for the sentence to be vacated. That's correct, Your Honor. And on the grounds that counsel was inadequate, incompetent. Incompetent, let's put it that way. Is that correct? Yes, Judge Duffy, as – Does that mean that everybody gets counsel except counsel? Everybody gets a hearing except the lawyers? Your Honor. You know, I think that Shakespeare was right about that. Let's kill all the lawyers first. That's what you're advocating. That would be an empty world. Your Honor. Well, maybe your world, but I've got some friends who are lawyers. Your Honor, I'm glad that you raised that because, of course, that's part of what the government says, is that you shouldn't consider this on direct review because the record isn't fully developed. The record is fully developed, as I said earlier, about what happened, but also what could possibly be added. The only thing that would be added would be counsel's motivation for arguing against his client's liberty interest. And, frankly, who cares? It's not what the client wanted, and it was ineffective, and it gave the judge a green light to impose the sentence that the government wanted. And I go back to the question raised by Judges Pius and Bea about is it appropriate for the court to impose a sentence based on what the court thinks will benefit the defendant's medical situation. And I say no, absolutely not. And we see here that, in fact, the judge, at least to a certain extent, did that. He refers to the medical condition. He says maybe you're better off in prison. And even the government acknowledges that. In the government's answering brief at page 31, the government says the sentence was, quote, primarily for the protection of society. And, yes, the judge did say we need to protect society. But even if a portion, which is what – given that a portion of the sentence was based on and reflecting overtly the medical condition, that's enough. Well, you know, it's kind of hard for the judge. Once all this has been brought to the judge's attention, just to suppress that completely. Well, I do think what's hard – it's hard for the judge here because he didn't have an advocate for the defendant. And is the judge supposed to sua sponte, say, defense counsel, are you really arguing for more time? But what the judge had here, I admit the sentencing memorandum was tolerable. But as Judge Pius indicated, it was completely eviscerated by counsel's remarks at the sentence hearing. Well, I didn't actually say eviscerated. I said, you know, theoretically, a lawyer could come into court and sabotage his own work. Correct, Your Honor. And I believe that's what happened here. And we have an effective assistance of counsel. It's clear on the record. It's appropriate for direct review. And we request that you vacate the sentence and remand. Thank you. Thank you very much. We appreciate counsel's argument. Thank you. The matter is submitted.
judges: Duffy, Paez, Bea